

**SIGNED this 7th day of September, 2012**

_____
Marcia Phillips Parsons
UNITED STATES BANKRUPTCY JUDGE

_____

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| In re | |
| FERRY ROAD PROPERTIES, LLC, | No. 11-52170 |
| Debtor. | Chapter 11 |
| FERRY ROAD PROPERTIES, LLC, | |
| Plaintiff, | |
| vs. | Adv. Pro. No. 12-5022 |
| RL BB ACQ II-TN, LLC, | |
| Defendant. | |

## M E M O R A N D U M

Appearances:

| | |
|---|---|
| Brenda G. Brooks, Esq. | Joseph R. Prochaska, Esq. |
| 6207 Highland Place Way, Suite 203 | 401 Church Street, Suite 2600 |
| Knoxville, Tennessee 37919 | Nashville, Tennessee 37219 |
| _Attorney for Ferry Road Properties, LLC_ | _Attorney for RL BB ACQ II-TN, LLC_ |

**Marcia Phillips Parsons, Chief United States Bankruptcy Judge.**   In this adversary proceeding, the debtor Ferry Road Properties, LLC ("Ferry Road") objects to a secured claim filed by RL BB ACQ II-TN, LLC ("RL BB"), and seeks a determination of the validity, priority and extent of RL BB's lien rights.  Presently before the court are the parties' cross motions for summary judgment.  At issue is whether RL BB's mortgage lien on real property formerly owned by Ferry Road but upon which RL BB has foreclosed extends to Ferry Road's state court cause of action for damages to the real property and loss of business income.  For the reasons discussed hereafter, the court answers "yes" to the former claim but "no" to the latter.  This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(K).

I.

The facts as stipulated by the parties are as follows: On January 30, 2008, Ferry Road acquired certain real estate located at 234 Wears Valley Road in Sevier County, Tennessee (the "Real Property") for the purpose of constructing a retail store that it would lease on a long term basis to a commercial tenant.  In order to finance the construction,  Ferry Road obtained a construction loan from Branch Banking & Trust Company ("BB&T") on January 13, 2009, in the principal amount of $955,000, as evidenced by a promissory note.  To secure the loan, Ferry Road executed a deed of trust and an assignment of leases and rents, which were duly filed in the Register's Office for Sevier County on January 13, 2009.  BB&T subsequently assigned the note, deed of trust, and assignment of leases and rents to Rialto Real Estate Fund, L.P., who made a subsequent assignment to RL BB.  Both assignments were recorded in the Register's Office for Sevier County.

Ferry Road began construction on the Real Property in 2008.   To manage the construction project, Ferry Road hired  Pro-Built Construction ("Pro-Built"), a company wholly owned by Dwight Collins ("Collins"), the sole member of Ferry Road.  Because the Real Property required a retaining wall before actual construction on a retail building could begin, Pro-Built hired Applied Engineering and Management Corporation ("AEMC") and J.B. Turnmire ("Turnmire") to design a retaining wall.  Pro-Built then built the retaining wall according to the design, and AEMC and Turnmire approved the construction.  Their approval allowed Ferry Road to obtain a building permit for the Real Property and proceed with construction of a retail building.

2

When Ferry Road began to negotiate a long term lease agreement with Family Dollar, the retailer refused to enter into a lease for the Real Property because the retaining wall was "woefully defective." Subsequently, another potential tenant refused to lease the Real Property after concluding that the retaining wall was "dangerously defective." On June 17, 2009, Collins and Pro-Built commenced a state court action in the Chancery Court for Knox County, Tennessee against AEMC and Turnmire, seeking $1.5 million in compensatory damages as a result of "defendants' negligence and/or malfeasance" for "loss of [plaintiffs'] contracts, the insufficiency of the construction, attorney fees and additional damages which all are reasonably foreseeable . . . ." On December 2, 2009, that action was amended to include Ferry Road as a party plaintiff, and remains pending.

After the commencement of the state court action, RL BB foreclosed upon the Real Property on June 29, 2011. By successor trustee's deed recorded on August 2, 2011, RL BB acquired the Real Property, and credited its foreclosure bid against Ferry Road's outstanding loan obligation. Following foreclosure, Ferry Road filed a petition for chapter 11 bankruptcy relief on September 22, 2011. Ferry Road listed RL BB in its schedules as the holder of an unsecured, contingent, unliquidated, and disputed claim in the amount of $582,531.66. On January 27, 2012, RL BB filed a proof of claim in the amount of $580,574.01, asserting that the claim was secured. On May 7, 2012, Ferry Road commenced the present adversary proceeding, objecting to RL BB's secured claim and seeking a determination pursuant to Federal Rule of Bankruptcy Procedure 7001(2) of the validity, priority and extent of RL BB's lien rights in the state court action. Although not expressly addressed in the parties' stipulations, it does not appear that Ferry Road challenges the amount of RL BB's claim, only its secured status. As contemplated by a scheduling order entered July 17, 2012, both parties have moved for summary judgment. They agree that there is no dispute as to any material fact, and that the only determination by the court is which party is entitled to summary judgment as a matter of law.

II.

RL BB asserts that it has a properly perfected, first priority security interest in Ferry Road's state court action because its deed of trust and assignment of leases and rents grant RL BB a lien not

3

only on the Real Property and its rents but also "all proceeds thereof."  More specifically, the

relevant language of the deed of trust states:

> Grantor hereby conveys to Trustee, in trust, with power of sale, the Real Property
> described in this Deed of Trust, together with any improvements, equipment and
> fixtures existing or hereafter placed on or attached to this Real Property, all proceeds
> thereof and all other appurtenant rights and privileges.  The term "the Property" shall
> include this Real Property, any such improvements, fixtures, and also all appurtenant
> rights and privileges.

Similarly, the assignment of leases and rents assigns "the income, rents . . . , receivables, security

or similar deposits, revenues, issues, royalties, profits, earnings, products and proceeds from any and

all of the [Real] Property."  According to RL BB, the lawsuit represents proceeds of the Real

Property because it is a claim for damages and loss associated with the realty.

In response, Ferry Road asserts that the deed of trust's reference to proceeds only grants

RL BB a lien in proceeds from the sale of the Real Property, not the lawsuit or its potential proceeds.

Ferry Road maintains that in order for RL BB to have a security interest in the state court action

there must have been the grant of a security interest in the specific commercial tort claim, and

perfection of that interest by filing a UCC-1 financing statement with the Tennessee Secretary of

State, neither of which occurred in this case.  Moreover, asserts Ferry Road, pursuant to the doctrine

of merger RL BB lost all of its lien rights when it foreclosed on the Real Property since its lien

interest merged with its acquisition of the legal title to the property.

Turning first to RL BB's argument, this court notes that this issue, at least in part, has been

previously addressed by this court speaking through the late Judge Clive W. Bare.  *See Tri-City*

*Bank & Trust Co. v. Goforth (In re Goforth)*, 24 B.R. 100 (Bankr. E.D. Tenn. 1982).  The issue in

*Goforth* was whether the lender under a deed of trust was entitled to proceeds from the settlement

of a lawsuit commenced by the debtors/borrowers prior to the filing of their bankruptcy case to

recover damages to real property formerly owned by them and mortgaged to the lender.  *Id.* at 101-

02.  Analyzing Tennessee law on the issue, the court first recognized that both a mortgagor and

mortgagee have a cause of action against a negligent third party for damages to mortgaged personal

property, although only one recovery is permitted absent fraud or collusion.  *Id*. at 104 (citing *Ellis*

*v. Snell*, 313 S.W.2d 558 (Tenn. App. 1955); *Harris v. Seaboard Air Line Ry. Co.*, 130 S.E. 319

4

(N.C. 1925)).   Moreover, as between the chattel mortgagee and mortgagor, the former has a "superior right to the receipt of a settlement payment," *id*. (citing *Harris*, 130 S.E. at 322), with the "sum paid or recovered as damages . . . held in trust to be applied according to the respective rights of mortgagee and mortgagor." *Harris*, 130 S.E. at 322.  Judge Bare in *Goforth* found these personal property cases persuasive in the analogous real property context. The court further observed that the lender in the case before it had relied upon the value of contemplated improvements when the loan was extended and the deed of trust accepted as security, and, consequently, "it would be inequitable to deny the plaintiff's claim to the settlement proceeds in this case since the liquidation proceeds were insufficient to satisfy the amount of the [lender's] claim against the debtors." *Id.* at 105.  Based on this analysis, the *Goforth* court concluded that the lender rather than the debtors was entitled to the settlement proceeds from the property damage litigation.  *Id.*; *see also State v. Holland*, 367 S.W.2d 791, 795 (Tenn. App. 1962) (quoting 18 Am. Jur. *Eminent Domain* § 868) ("It is a general and well established rule that, when mortgaged property is taken by eminent domain, or damaged to such an extent that the security of the mortgage is impaired, the mortgagee's rights against the land follow the award, and he may have the mortgage debt satisfied out of that fund.").

The conclusion reached in *Goforth* has been similarly applied by courts in other jurisdictions. *See Am. Savings & Loan Assoc. v. Leeds*, 440 P.2d 933, 936 n.2 (Cal. 1968); *In re Gilley*, 236 B.R. 448, 450-55 (Bankr. M.D. Fla. 1999); *Wilson v. Mellott (In re Wilson)*, No. A10-4035-TJM, 2010 WL 5341917, at *3-4 (Bankr. D. Neb. Dec. 21, 2010); *but see In re Schrewe*, 108 B.R. 116, 117-18 (E.D. La. 1989) (concluding that a cause of action for physical damages to mortgaged real property is personal property under a Louisiana statute, thus preventing the mortgage lien from extending to the cause of action as collateral).  As explained in *American Savings* by the esteemed late California Supreme Court Chief Justice Roger Traynor*,* the rationale for extending the secured creditor's interest to an award for damages to real property is based on the theory of "equitable conversion" or "substitute property":

> The money so awarded by the court as damages to the realty must be treated, in
> equity, as the land itself.  It takes the place of the reduced value of the land.  The
> mortgaged land, in its present damaged condition, together with such portion of all
> the moneys awarded for the total injury as represents the damage to the mortgaged
> premises, stand now in the place and stead of the original uninjured mortgaged
> premises.

*Am. Savings*, 440 P.2d at 936 n.2 (quoting *Los Angeles Trust & Savings Bank v. Bortenstein*, 190

P. 850, 852 (Cal. Dist. Ct. App. 1920)); *see also Holland*, 367 S.W.2d 791, 795 (Tenn. App. 1962)

("The award, to the extent of the property appropriated to a public use [through eminent domain],

is a substitute for the property so taken and, in equity, the mortgagee has a lien on the award to the

extent of his unpaid debt." (citation omitted)); *Restatement (Third) of Property (Mortgages)* § 4.7(a)

& cmt. a (2012) (referencing a mortgagee's right to recovery from insurance proceeds and

condemnation awards and the extension of this principle to other funds established for loss or

damage to mortgaged real property).

In opposition to this conclusion, Ferry Road cites the legal encyclopedia *Corpus Juris

Secundum* for the proposition that "[t]he lien of a mortgage ordinarily cannot be extended or shifted

to any other property than that described in the mortgage, such as a security interest in the proceeds

of a cause of action for damage to property, except by agreement of the parties . . . ." 59 *C.J.S.

Mortgages* § 232 (2012).  However, the encyclopedia's only cited authority for this statement is

*Matter of Schrewe*, 108 B.R. 116 (E.D. La. 1989), which case turned specifically on Louisiana

statutory law.  Because Tennessee law on the subject as discussed in *Goforth* is to the contrary,

neither *Schrewe* nor the cited statement in *Corpus Juris Secundum* is determinative of the inquiry

at hand.[1]

As previously noted, Ferry Road also references the doctrine of merger, arguing that any lien

rights held by RL BB terminated when it foreclosed upon and became the owner of the Real

Property.  As a general proposition, Ferry Road is correct that foreclosure extinguishes a lien in real

property, allowing the purchaser to take free of the deed of trust.  *See* 59A *C.J.S. Mortgages* § 1208

(2012); *see also Patterson v. Turner*, No. 01-A-01-9007CH00267, 1990 WL 207413, at *2-4 (Tenn.

App. Dec. 19, 1990) (citing 59 *C.J.S. Mortgages* § 437) ("Ordinarily the purchase or acquisition of

the equity of redemption in mortgaged premises by the mortgagee results in a merger of the two

estates, vesting the mortgagee with the complete title, and putting an end to his rights or title under

---

[1] The parties have not stipulated that Tennessee law is applicable, but both reference
Tennessee law in their memoranda filed in support of their summary judgment motions, and the Real
Property is located in Tennessee.  Moreover, the deed of trust and assignments of leases and rents
both state that they are governed by Tennessee law.

the mortgage."); 59 *C.J.S. Mortgages* § 718 (2012) ("The result of the cancellation of the lien by a valid foreclosure is not affected by the fact that the holder of the security indebtedness becomes the purchaser at the sale."). This rule is not absolute, however. As explained by the Tennessee Court of Appeals in *Patterson*:

> Merger does not always or necessarily follow . . . from a conveyance of the land to the mortgagee; a merger of the fee or equity of redemption with the interest of the mortgagee is not favored and will not be allowed where it would work injustice or violate well-established principles of equity, or . . . where contrary to the intention of the parties . . . .
>
> In the final analysis, whether or not the conveyance of property covered by a mortgage to the holder of the mortgage operates as a merger depends on the facts and circumstances of the particular case.
>
> . . . .
>
> The intention of the parties on the question of merger may be expressly declared, or it may appear from the conduct of the parties, the circumstances of the transaction, and the particular equities of the case. In any event, however, the intention to merge must be clear.
>
> Ordinarily a merger will not be held to result where a denial of a merger is necessary to protect the interests of the mortgagee, the presumption being, in the absence of proof to the contrary, that he intended what would best accord with his interests.

*Patterson*, 1990 WL 207413, at *3 (quoting 59 *C.J.S. Mortgages* §§ 437 and 441). *See also Budensiek v. Williams*, No. 1168, 1988 WL 102774, at *6 (Tenn. App. Oct. 6, 1988) ("Wherever a merger will operate inequitably, it will be prevented."); *Restatement (Third) of Property (Mortgages)* § 8.5 cmt. a (2012) ("Today, the equitable exception has swallowed the legal rule."). Similarly, it has been recognized that where the property acquired by the mortgagee is worth less than the amount of the mortgage debt there will be no merger unless the equities of the particular case require it. 59 *C.J.S. Mortgages* § 551 (2012).

Ferry Road has not cited, and this court has not located, any authority that directly addresses the issue of whether the doctrine of merger would preclude RL BB after its foreclosure purchase from asserting a lien interest in Ferry Road's property damage lawsuit. If the intention or the best interests of the mortgagee determines whether a merger results, undeniably a merger would be contrary to RL BB's interests. Its proof of claim in the amount of $580,574.01 indicates that it has not been paid in full, although the parties have not expressly stipulated that RL BB's credit bid at

the foreclosure sale was less than the full amount of the debt. If indeed that were the case, presumably the Real Property was not worth the amount owed on it because of the alleged damage to the realty by the state court defendants. Consequently, it would be inequitable to conclude that RL BB has no interest in the property damage claim, even though it was not paid in full from the foreclosure sale and it was its collateral that was damaged.[2]

Moreover, in the analogous situations of casualty insurance, eminent domain, and waste claims, a mortgagee continues to have a right to these funds, notwithstanding a foreclosure sale, with the mortgagee's interest limited to any remaining debt obligation resulting from a deficiency in the foreclosure proceeds. *See First Inv. Co. v. Allstate Ins. Co.*, 917 S.W.2d 229, 231 (Tenn. App. 1994) (mortgagee who had purchased real property at foreclosure sale by bidding in the full amount of debt was not entitled to insurance proceeds for loss occurring prior to foreclosure, with the court noting that the result would have been otherwise had the mortgagee bid in less than the full amount of the debt); *Restatement (Third) of Property (Mortgages)* § 4.7 cmt. a (2012) ("Such funds are viewed as substitute collateral, and the mortgagee's claim on this is sometimes described as an 'equitable lien.'. . . This result is required to avoid unfairness to the mortgagee through devaluation of the real estate as a consequence of the loss or damage. . . . If the bid at the foreclosure sale is sufficient to discharge the entire debt secured by the mortgage, the debt no longer exists and the mortgagee may make no claim on the funds. . . . If the foreclosure discharges the debt only partially, the lender's claim on these funds is limited to the remainder of the debt.").

Although not exactly on point, the case of *In re D'Ellena* by the Supreme Court of Rhode Island is instructive on the issue at hand. *See In re D'Ellena*, 640 A.2d 530 (R.I. 1994). In that decision, the State of Rhode Island had condemned a portion of the debtor's real property. Prior to the distribution of the condemnation proceeds which totaled $36,505, the debtor filed for bankruptcy

---

[2] This entire discussion presumes that application of the doctrine of merger would preclude RL BB's assertion of an interest in the property damage claim as Ferry Road asserts. To this court's knowledge, however, no court has reached this conclusion. And as explained in the *Restatement (Third) of Property (Mortgages)*, the doctrine of merger "was created solely to serve the nonsubstantive function of simplifying property titles" and was not designed to have a substantive effect on the enforceability of mortgages. *Restatement (Third) of Property (Mortgages)* § 8.5 cmt. a (2012).

relief, with the mortgage holder thereafter granted stay relief due to the debtor's default. After a foreclosure sale a deficiency of $400,000 remained. The mortgagee then filed a second stay relief motion seeking to collect the condemnation proceeds, but the bankruptcy trustee opposed the motion, asserting that the creditor did not hold a perfected security interest in the proceeds. Both the note and mortgage were silent on the issue of whether the mortgagee's interest extended to condemnation proceeds, and there was no applicable state law on the issue. The bankruptcy court certified the question to the Rhode Island Supreme Court, which adopted the "long-standing majority rule . . . that when part of a mortgaged parcel of land is taken by eminent domain, the mortgagee is entitled, under equitable principles, to the proceeds thereof up to the amount of its interest in the property." *Id*. at 532-33 (citations omitted). The court noted that the theory underlying the rule, which was warranted by "principles of justice, fairness, and equity," was that the condemnation award equitably stood in the place of the land taken, with the mortgage operating as an equitable lien on the award. *Id*. at 533 (citations omitted). The court further found that the equitable considerations which favored the rule were heightened by the fact that Rhode Island is a title-theory state, such that a mortgagee not only obtains a lien but also legal title subject to defeasance upon payment of the debt. *Id*. Accordingly, the *D'Ellena* court concluded that the mortgagee was entitled to the condemnation proceeds to the extent of any deficiency that existed after foreclosure. *Id.* at 534. In the present case, Tennessee is similarly a title-theory state. *See Howell v. Tomlinson*, 228 S.W.2d 112, 116 (Tenn. App. 1949); *see also Lieberman, Loveman & Cohn v. Knight,* 283 S.W. 450, 453–54 (Tenn.1926) (describing equitable influences on Tennessee's title theory approach).

This court further observes that in Judge Bare's *Goforth* decision previously discussed the mortgagee had foreclosed on the damaged real property and had been the successful bidder with a deficiency remaining after the sale*. See In re Goforth*, 24 B.R. at 102-03. Although there is no indication that a merger argument was made or considered, the fact that a foreclosure sale had taken place did not deter the court from concluding that the secured creditor held an interest in the settlement proceeds for damages to real property that took place after the execution of the deed of trust but prior to the creditor's foreclosure. *Id.* at 104-05. Based on all of the foregoing, this court rejects Ferry Road's merger argument and concludes that RL BB's mortgage interest extends to

Ferry Road's claim for damages to the Real Property, to the extent that RL BB's claim was not paid in full by its credit bid at the foreclosure sale.

This ruling, however, only pertains to Ferry Road's claim for damages to the Real Property, which damages are viewed as a substitute for the realty itself.  To the extent that Ferry Road's state court action encompasses claims beyond property damage,  RL BB has no lien interest.  As set forth in the state court complaint, Ferry Road also seeks damages resulting from "defendants' negligence and/or malfeasance," caused by "the loss of [plaintiffs'] contracts," which Ferry Road characterizes in its brief in support of its motion for summary judgment as "lost income expectancy."  A claim for business losses is personal property of Ferry Road, *see* Tenn. Code Ann. 1-3-105(21) ("'Personal property' includes money, goods, chattels, things in action, and evidences of debt;"), and constitutes a commercial tort claim. *See* Tenn. Code Ann. § 47-9-102(a)(13) ("'Commercial tort claim' means a claim arising in tort with respect to which:  (A) the claimant is an organization; or (B) the claimant is an individual and the claim:  (i) arose in the course of the claimant's business or profession; and (ii) does not include damages arising out of personal injury to or the death of an individual."); *see also Helms v. Certified Packaging Corp.*, 551 F.3d 675, 679-81 (7th Cir. 2008) (negligence claim for business losses is a commercial tort claim under the UCC).

There is simply no authority for the proposition that RL BB has a security interest in Ferry Road's commercial tort claim as "proceeds" under RL BB's deed of trust or assignment of leases and rents.  Under Tennessee law, the grant of a security interest in a commercial tort claim must be described with specificity.  *See* Tenn. Code Ann. § 47-9-108(e)(1) ("[a] description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of: (1) a commercial tort claim."); *see also* Tenn. Code Ann. §§ 47-9-108 cmt. 5 (while a description of all existing and after-acquired commercial tort claims would be insufficient, "a description such as 'all tort claims arising out of the explosion of debtor's factory'" would suffice, even if the exact amount of the claim, the theory on which it may be based, and the identity of the tortfeasor(s) are not described").  As explained in the commentary to this statute, this specificity requirement is designed to prevent debtors from inadvertently encumbering these claims. *Id.*  Additionally, because after-acquired property clauses in a security agreement do not reach future commercial tort claims, *see*

Tenn. Code Ann. § 47-9-204(b), such claims "must be in existence when the security agreement is authenticated." Tenn. Code Ann. § 47-9-204 cmt. 4. In the present case, neither the deed of trust nor the assignment of rents and leases describes or grants an interest in any specified commercial tort claim. Moreover, Ferry Road's state court cause of action did not arise until after the deed of trust and assignment of leases and rents were executed. Thus, Tennessee statutory law provides no support for RL BB's argument that it has a lien on Ferry Road's claim for business losses.

And, while there are no Tennessee cases on point expressly addressing the issue of whether commercial tort claims may be encompassed in a general "proceeds" description, cases from other jurisdictions applying the same UCC provisions have uniformly rejected this argument. *See Helms*, 551 F.3d at 679-81 (while creditor's security interest in debtor's equipment extended to debtor's claim for property damage to that equipment, security interest did not extend to debtor's claim for business losses; latter was not proceeds of collateral and security agreement did not describe the commercial tort claim with the required UCC specificity); *City Sanitation, LLC. v. Burdick (In re Am. Cartage, Inc.*), 438 B.R.1, 12 (D. Mass. 2010) (security interest in debtor's goods, inventory, equipment, accounts, and other property, and all proceeds of the foregoing did not encompass debtor's commercial tort claims); *In re Zych*, 379 B.R. 857, 860-64 (Bankr. D. Minn. 2007) (security interest in accounts, general intangibles, livestock and proceeds did not extend to debtor's commercial tort claim for conversion of livestock); *see also Christine Falls of New York, Inc. v. Algonquin Power Corp. (In re Frank Indus. Complex, Inc.)*, 377 B.R. 32, 51 (Bankr. N.D.N.Y. 2007) (the words "all tort claims" in a security agreement are insufficiently specific to effect attachment of a commercial tort claim). As reasoned in *American Carthage*, "the UCC requires that contracting parties deliberately specify commercial tort claims as collateral. Reading the right to prosecute tort claims into the term 'proceeds' would undermine the structure and purpose of the statute." *In re Am. Cartage, Inc.*, 438 B.R. at 14. This court agrees and consequently rejects RL BB's assertion that its lien interest in the Real Property and its proceeds extends to Ferry Road's commercial tort claims.

III.

Rule 56 of the Federal Rules of Civil Procedure, as incorporated by Federal Rules of Bankruptcy Procedure 7056, provides that a party may move for summary judgment on any claim

11

or defense, and that the court shall grant summary judgment "if the movant shows there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." As set forth in this memorandum, the court concludes that RL BB's lien interest in the Real Property extends to Ferry Road's state court action to the extent that the action represents claims for physical damages to the Real Property and to the extent that a deficiency remained after the foreclosure sale. The court further concludes that RL BB's mortgage lien does not extend to any other claim in Ferry Road's state court action.[3] Accordingly, the court will enter an order consistent with this memorandum granting in part and denying in part the parties' cross motions for summary judgment.

# # #

---

[3] Even if the deed of trust and/or assignment of leases and rents otherwise qualified as a security agreement that encompassed Ferry Road's commercial tort claims, Tennessee law is clear as pointed out by Ferry Road that a security interest in these claims is perfected by the filing of a financing statements, which did not occur in this case. *See* Tenn Code Ann. § 47-9-310.